BENJAMIN B. WAGNER
United States Attorney
Michele Beckwith
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

**FILED**

JUN 1 1 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:13-CR-204 MCE |
| Plaintiff, | PLEA AGREEMENT FOR AURELIO RUBEN-BULGIN |
| v. | |
| EDWIN MALO-VERGARA,<br>  aka Edwin Malo-Flores,<br>  aka Edwin Malo,<br>JOSE JUNEZ-RAMIREZ, SR.,<br>  aka Jose Junez, and<br>AURELIO RUBEN-BULGIN,<br>  aka Rubin Bulgin, | |
| Defendants. | |

## I.    INTRODUCTION

### A.    Scope of Agreement

The superseding information in this case charges the defendant with a violation of Title 21, United States Code, Sections 846 and 841(a)(1), Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine (Count One), and a violation of Title 21, United States Code, Section 841(a)(1), Distribution of Heroin (Count Two). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's

1   Office for the Eastern District of California and cannot bind any other federal, state, or local

2   prosecuting, administrative, or regulatory authorities.

3   **B.   Court Not a Party**

4       The Court is not a party to this plea agreement.  Sentencing is a matter solely within the

5   discretion of the Court, and the Court may take into consideration any and all facts and circumstances

6   concerning the criminal activities of defendant, including activities that may not have been charged in

7   the superseding information.  The Court is under no obligation to accept any recommendations made by

8   the government, and the Court may in its discretion impose any sentence it deems appropriate up to and

9   including the statutory maximum stated in this plea agreement.

10       If the Court should impose any sentence up to the maximum established by the statute, the

11   defendant cannot, for that reason alone, withdraw his guilty plea, and he will remain bound to fulfill all

12   of the obligations under this plea agreement.  The defendant understands that neither the prosecutor,

13   defense counsel, nor the Court can make a binding prediction or promise regarding the sentence he will

14   receive.

15   **II.        DEFENDANT'S OBLIGATIONS**

16   **A.   Guilty Plea**

17       The defendant will plead guilty to count one of the superseding information, which charges a

18   violation of Title 21, United States Code, Sections 846 and 841(a)(1), Conspiracy to Distribute and to

19   Possess with Intent to Distribute Methamphetamine.  The defendant agrees that he is in fact guilty of

20   these charges and that the facts set forth in the Factual Basis For Plea attached hereto as Exhibit A are

21   accurate.

22       The defendant agrees that this plea agreement will be filed with the Court and become a part of

23   the record of the case.  The defendant understands and agrees that he will not be allowed to withdraw his

24   plea should the Court not follow the government's sentencing recommendations.

25       The defendant agrees that the statements made by him in signing this Agreement, including the

26   factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by

27   the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a

28   guilty plea pursuant to this Agreement.  The defendant waives any rights under Rule 11(f) of the Federal

2

Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

The defendant acknowledges that the crime to which he is pleading guilty is listed in 18 U.S.C. § 3143(a)(2), which requires remand into custody upon the entry of his plea, unless exceptional circumstances can be shown under *United States v. Garcia*, 340 F.3d 1013 (9th Cir. 2003).  Gree

**B.     Fine**

The defendant agrees to pay a fine if one is imposed by the Court.

**C.     Special Assessment**

The defendant agrees to pay a special assessment of $100.00 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing.  The defendant understands that this plea agreement is voidable at the option of the government if he fails to pay the assessment prior to that hearing.  If the defendant is unable to pay the special assessment at the time of sentencing, he agrees to earn the money to pay the assessment, if necessary by participating in the Inmate Financial Responsibility Program.

**D.     Defendant's Violation of Plea Agreement or Withdrawal of Plea**

If the defendant, violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government.  The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein.  One way a defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete.  Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement.  The determination whether the defendant has violated the plea agreement shall be decided under a probable cause standard.

If the defendant violates the plea agreement, withdraws his plea, or tries to withdraw his plea, the government shall have the right: (1) to prosecute the defendant on any of the counts to which he pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement.  The defendant shall thereafter

1    be subject to prosecution for any federal criminal violation of which the government has knowledge,

2    including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these

3    options is solely in the discretion of the United States Attorney's Office.

4         By signing this plea agreement, the defendant agrees to waive any objections, motions, and

5    defenses that the defendant might have to the government's decision to exercise the options stated in the

6    previous paragraph. Any prosecutions that are not time-barred by the applicable statute of limitations as

7    of the date of this plea agreement may be commenced in accordance with this paragraph,

8    notwithstanding the expiration of the statute of limitations between the signing of this plea agreement

9    and the commencement of any such prosecutions. The defendant agrees not to raise any objections

10   based on the passage of time with respect to such counts including, but not limited to, any statutes of

11   limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth

12   Amendment to any counts that were not time-barred as of the date of this plea agreement.

13        In addition: (1) all statements made by the defendant to the government or other designated law

14   enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal,

15   whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or

16   administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no

17   claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal

18   Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by

19   the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed.

20   By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

21                  **III.     THE GOVERNMENT'S OBLIGATIONS**

22       **A.     Dismissals**

23        The government agrees to move, at the time of sentencing, to dismiss without prejudice the

24   pending indictment and the remaining counts in the pending superseding information. The government

25   also agrees not to reinstate any dismissed count except if this agreement is voided as set forth herein, or

26   as provided in II.D (Defendant's Violation of Plea Agreement), VI.B (Guidelines Calculations), and

27   VII.B (Waiver of Appeal) herein.

28

**B.    Recommendations**

    1.    Incarceration Range

The government will recommend that the defendant be sentenced to the low end of the applicable guideline range for his offense, as determined by the Court.

    2.    Acceptance of Responsibility

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of defendant's offense level if he clearly demonstrates acceptance of responsibility for his conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

**C.    Use of Information for Sentencing**

The government is free to provide full and accurate information to the Court and the United States Probation Office ("Probation"), including answering any inquiries made by the Court and/or Probation, and rebutting any inaccurate statements or arguments by the defendant, his attorney, Probation, or the Court.  The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

## IV.    ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

As to Count One, Conspiracy to Distribute and to Possess with Intent to Distribute Methamphetamine in violation of Title 21, United States Code, Sections 846 and 841(a)(1):

    1.    First, beginning on or about April 17, 2013, and continuing to on or about May 23, 2013, there was an agreement between two or more persons to distribute methamphetamine; and,

    2.    The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

1    The defendant fully understands the nature and elements of the crimes charged in the

2   superseding information to which he is pleading guilty, together with the possible defenses thereto, and

3   has discussed them with his attorney.

4                              **V.      MAXIMUM SENTENCE**

5        **A.     Maximum penalty**

6        The maximum sentence that the Court can impose is twenty years of incarceration, a fine of

7   $~~1,000,000~~, a three-year period of supervised release and a special assessment of $100. In addition, the

8   defendant may be ineligible for certain federal and/or state assistance and/or benefits, pursuant to 21

9   U.S.C. § 862. By signing this plea agreement, the defendant also agrees that the Court can order the

10   payment of restitution for the full loss caused by the defendant's wrongful conduct.

*handwritten: $250,000*

11       **B.     Violations of Supervised Release**

12       The defendant understands that if he violates a condition of supervised release at any time during

13   the term of supervised release, the Court may revoke the term of supervised release and require the

14   defendant to serve up to two years of additional imprisonment.

15                          **VI.     SENTENCING DETERMINATION**

16       **A.     Statutory Authority**

17       The defendant understands that the Court must consult the Federal Sentencing Guidelines and

18   must take them into account when determining a final sentence. The defendant understands that the

19   Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

20   Sentencing Guidelines and must take them into account when determining a final sentence. The

21   defendant understands that the Court will determine a non-binding and advisory guideline sentencing

22   range for this case pursuant to the Sentencing Guidelines. The defendant further understands that the

23   Court will consider whether there is a basis for departure from the guideline sentencing range (either

24   above or below the guideline sentencing range) because there exists an aggravating or mitigating

25   circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing

26   Commission in formulating the Guidelines. The defendant further understands that the Court, after

27   consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable

28   in light of the factors set forth in 18 U.S.C. § 3553(a).

6

**B.      Guideline Calculations**

The government and the defendant agree that the following is their present best estimate of the sentencing guidelines variables.  These estimates shall not be binding on the Court, the Probation Office, or the parties:

1.      Base Offense Level: The base offense level is 32 under U.S.S.G. § 2D1.1.  The defendant sold over 200 grams of actual methamphetamine, which equates to level 32 under § 2D1.1(c)(III).

2.      Acceptance of Responsibility:  See paragraph III.B.2 above

3.      Criminal History:  The parties estimate that defendant is in category I.

4.      Sentencing Range:  Assuming the defendant complies with his obligations under paragraph III.B.2 above, and three points are deducted for acceptance of responsibility, the estimated guidelines range is 87-108 months.

5.      Safety Valve:  The defendant's guidelines range may be reduced further, by an additional two levels pursuant to U.S.S.G. §2D1.1(b)(17), if he meets the criteria set forth in U.S.S.G. § 5C1.2(a).

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, [except that the government may move for a departure or an adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1)].  The defendant is not precluded from arguing for a lower sentence under 18 U.S.C. § 3553(a).

## VII.      WAIVERS

**A.      Waiver of Constitutional Rights**

The defendant understands that by pleading guilty he is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to testify on his behalf; (e) to confront and cross-examine witnesses against him; and (f) not to be compelled to incriminate himself.

**B.      Waiver of Appeal and Collateral Attack**

The defendant understands that the law gives the defendant a right to appeal his guilty plea,

1   conviction, and sentence. The defendant agrees as part of his plea/pleas, however, to give up the right to

2   appeal the guilty plea, conviction, and the sentence imposed in this case. The defendant specifically

3   gives up the right to appeal any order of restitution the Court may impose.

4   　　　Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if

5   one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the

6   statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant

7   understands that these circumstances occur infrequently and that in almost all cases this Agreement

8   constitutes a complete waiver of all appellate rights.

9   　　　In addition, regardless of the sentence the defendant receives, the defendant also gives up any

10  right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any

11  aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

12  　　　Notwithstanding the agreement in paragraph III.A (Dismissals) above that the government will

13  move to dismiss counts against the defendant, if the defendant ever attempts to vacate his plea, dismiss

14  the underlying charges, or modify or set aside his sentence on any of the counts to which he is pleading

15  guilty, the government shall have the rights set forth in paragraph II.D (Defendant's Violation of Plea

16  Agreement) herein.

17  　　　**C.　　Impact of Plea on Defendant's Immigration Status**

18  　　　Defendant recognizes that pleading guilty may have consequences with respect to his

19  immigration status if his is not a citizen of the United States. Under federal law, a broad range of crimes

20  are removable offenses, including offense to which the defendant is pleading guilty. Indeed, because

21  defendant is pleading guilty to Conspiracy to Distribute and to Possess with Intent to Distribute

22  Methamphetamine, removal is presumptively mandatory if the defendant is not a citizen of the United

23  States. Removal and other immigration consequences are the subject of a separate proceeding, however,

24  and defendant understands that no one, including his attorney or the district court, can predict to a

25  certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he

26  wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the

27  consequence is his automatic removal from the United States.

28

8

## VIII.    ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

## IX.    APPROVALS AND SIGNATURES

### A.    Defense Counsel

I have read this plea agreement and have discussed it fully with my client.  The plea agreement accurately and completely sets forth the entirety of the agreement.  I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:    6/11/15

_____
ERIN J. RADEKIN
Counsel for Defendant

### B.    Defendant

I have read this plea agreement and carefully reviewed every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case.  No other promises or inducements have been made to me, other than those contained in this plea agreement.  In addition, no one has threatened or forced me in any way to enter into this plea agreement.  Finally, I am satisfied with the representation of my attorney in this case.

Dated:    6/ 11 /15

_____
AURELIO RUBEN-BULGIN, Defendant

///
///
///
///
///

9

**C.**     **Court Certified Interpreter/Translator**

I declare that I am a court-certified Spanish-English interpreter/translator.  On

6-9-15 I read the entire contents of the foregoing plea agreement to AURELIO RUBEN-

BULGIN, translating the document from English to Spanish.

Dated:  6.9.15                                                    
                                                        Interpreter/Translator
                                                              MARÍ HASIBBON

**D.**     **Attorney for the United States**

I accept and agree to this plea agreement on behalf of the government.

Dated:  6/11/15

                                                    BENJAMIN B. WAGNER
                                                    United States Attorney

                                        By:   /s/ Michele Beckwith
                                                    Michele Beckwith
                                                    Assistant United States Attorney

1

**EXHIBIT "A"**
**Factual Basis for Plea**

2

3      If this matter proceeded to trial, the United States would establish the following facts beyond a

4   reasonable doubt:

5      On April 17, 2013, a confidential source ("CS") who had previously bought methamphetamine

6   from codefendant Edwin Malo-Vergera ("Malo") called Malo and they agreed to meet.   During the

7   meeting, Malo told the CS that his previous source of supply had been arrested, but that he had another

8   source of supply: his nephew. The defendant, AURELIO RUBEN-BULGIN ("BULGIN"), is Malo's

9   nephew.  Malo told the CS that his nephew sold methamphetamine and heroin.  Later that same day,

10   Malo called the CS and said that he would sell him a pound of methamphetamine for $7,500.

11      On April 24, 2013, an undercover officer ("UC") who had previously bought methamphetamine

12   from Malo called Malo and they agreed to meet.  During this meeting, the UC discussed buying multiple

13   pounds of methamphetamine from Malo and his nephew.  Malo agreed to sell the UC six pounds of

14   methamphetamine.  The UC also inquired about purchasing heroin.

15      At the end of the meeting, agents saw Malo drive directly to BULGIN'S house in Stockton,

16   California, which is in the State and Eastern District of California.   After Malo entered the home, the

17   UC called Malo and inquired about the heroin.  Malo said he was with his source, and the UC overheard

18   an individual say that a "piece" (roughly an ounce) of heroin cost $1,000.  MALO repeated this price to

19   the UC.

20      On May 9, 2013, the UC called Malo and they agreed to meet.  Agents observed Malo and

21   BULGIN leave BULGIN's house in BULGIN's car.  They drove to a meeting spot in Stockton,

22   California, and Malo introduced BULGIN to the UC as his nephew.  The UC requested an ounce of

23   heroin as a sample.  BULGIN and Malo described the quality of the heroin and quoted the price as

24   $1,000 per ounce.  Malo and BULGIN agreed to deliver "half a piece" of heroin to the UC later that day

25   as a sample.  They also discussed selling ten pounds of methamphetamine to the UC at a later date.

26      Later, the UC called Malo and asked him to deliver a whole piece of heroin.  Malo agreed, and

27   he and BULGIN later met the UC and sold him an ounce of heroin for $1,000.  During this same

28   meeting, Malo and BULGIN agreed to sell the UC ten pounds of methamphetamine for $73,000.  Malo

1  and BULGIN told the UC to put $10,000 in three separate bank accounts and to bring the remaining

2  $43,000 on the date of delivery.  Malo told the UC that he would give him the bank account information

3  later.

4        On or about May 14, 2013, the UC called Malo, who gave him information related to three bank

5  accounts, one in the name of Edwin Malo, one in the name of Ruben BULGIN, and another in the name

6  of BULGIN's wife.

7        On or about May 19, 2013, Malo called the CS and told him that he was making the necessary

8  arrangements to deliver the methamphetamine that Thursday.

9        On or about May 23, 2013, the UC, CS, and Malo were in frequent telephone communication

10  with each other.  During one call, BULGIN told the UC that he was on the way to the deal with the

11  methamphetamine.  Although BULGIN ultimately never met the UC, agents stopped BULGIN and

12  searched his car based on probable cause, bolstered by a "hit" by a dog trained in narcotics detection.

13  However, no drugs were found.  After being advised of his rights, BULGIN admitted knowledge of the

14  drug transaction and claimed that the drugs were coming from Fresno but that the courier had not yet

15  arrived.

16

17  Dated:  6/11/15                                   _____

18                                     AURELIO RUBEN-BULGIN, Defendant

2